Argued and submitted April 22, affirmed November 23, 1983, reconsideration denied February 24, petition for review denied March 27, 1984 (296 Or 712)

## STATE OF OREGON,
*Respondent,*

*v.*

## ARTHUR LYNN BROADSWORD,
*Appellant.*

(10-82-01983, 10-82-02318, 10-82-02319,
10-82-02320, 10-82-02321, 10-82-02322,
10-82-02323, 10-82-02324, 10-82-02325,
10-82-02326, CA A26041, A26042,
A26043, A26044, A26045, A26046,
A26047, A26048, A26049, A26050)
(Cases Consolidated)

672 P2d 366

Wayne T. Westling, Eugene, argued the cause and filed the briefs for appellant.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals ten convictions of burglary in the first degree, ORS 164.225. He contends that the trial court erred in denying his motion to suppress statements he made to the police and in sentencing him. We find no error and affirm.

Defendant was arrested on unrelated charges in Tillamook County on January 17, 1982. Eugene police learned that a prescription bottle stolen in a Eugene burglary was found in his possession. On January 19, two Eugene detectives went to Tillamook to question defendant. They met him in the county jail, explained that they were investigating several Eugene burglaries and advised him of his *Miranda* rights.

The detectives testified that defendant indicated he wanted to cooperate with the police, but that he wanted to talk to an attorney first. Detective Galick testified:

"Q.  Did [defendant] indicate he wanted to see you again?

"A.  The indication would be yes, that he would, but this would be once he had talked to an attorney."

Detective Coffman testified in relevant part:

"We advised him of his rights, he said he understood them, and Mr. Broadsword indicated that he did wish to cooperate with us but would like a chance to consult with an attorney first. We at that time did not ask Mr. Broadsword any questions regarding burglaries, indicating that we would recontact him after he had a chance to talk with his attorney."

Later that day, an attorney was appointed to represent defendant on the Tillamook County charges. He met with that attorney, who was aware of the Eugene detectives' interest in defendant, the following day. He told defendant that if any charges were brought in Lane County, the attorney would *not* be representing him on those charges. He advised defendant to consult with an attorney in Eugene when he was taken to Eugene. He and defendant discussed only the Tillamook County charges in detail. He advised defendant not to talk to the police about the Tillamook County charges until he had had an opportunity to investigate. He advised defendant that he had a right to remain silent. Later that day defendant was arrested in the Tillamook County jail on a Lane County burglary warrant.

The detectives continued their investigation. They obtained statements from Flo Rogers, defendant's girlfriend, and co-defendant Dana Burian, implicating defendant. They also found stolen property at a storage facility linked to defendant. On February 4, the detectives returned to Tillamook. Detective Galick testified in relevant part:

"* * * I personally told Mr. Broadsword the information which we had obtained from our sources, from Ms. Rogers, from Dana Burian, property we recovered. I asked if he had spoken with his attorney yet and once he was advised of all the information we had he said, 'Let's get on with it.'

"Q. Did he indicate whether he had spoken with his attorney—spoken with his attorney or not?

"A. Yes, he had, but he felt that he was in control and just said just 'Let's get on with it.' He didn't make any indication that he needed him present or anything like this."

Detective Coffman testified that defendant was advised of his *Miranda* rights and that he indicated he understood and waived his rights. Defendant testified that he agreed to talk to the detectives because they promised that he would not be prosecuted to the maximum and that Rogers and Burian would not be indicted. Thereafter defendant admitted several Eugene burglaries.

On Friday, February 26, the detectives again returned to Tillamook to drive defendant to Eugene. Before defendant started to return to Eugene, his Tillamook attorney advised him again to wait until he got to Lane County and had an attorney appointed before saying anything further. Ignoring that advice, and after being advised of his *Miranda* rights, defendant again talked with the detectives about the burglaries.

Defendant's memory of some of the Eugene burglaries was hazy. He agreed to accompany detectives on a tour of the homes. They drove around Eugene while defendant pointed out homes and the detectives questioned him about details of entry and what was stolen. On Saturday and Sunday, February 27 and 28, defendant pointed out more homes and the detectives continued to interrogate him. *Miranda* warnings were given defendant four to six times during the three days. After each warning defendant waived

his rights. Defendant was arraigned in district court on Monday, March 1.

Defendant moved to suppress his statements made on February 4, 26, 27 and 28. The trial court found that the statements "were freely and voluntarily given after advise [sic] of *Miranda* warnings" and that they were admissible in defendant's trials. After a bench trial on stipulated facts, defendant was found guilty.

Defendant relies primarily on *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981). In *Edwards* the defendant had voluntarly submitted to questioning but later stated that he wished an attorney before the discussions continued. The following day detectives approached the defendant in the county jail. When he refused to speak with them, he was told that "he had" to talk. The Supreme Court held that admission of the subsequent incriminating statements made by the defendant before counsel was made available to him violated the rights secured to the defendant by the Fifth and Fourteenth Amendments to the United States Constitution. The court stated:

> " '[A]lthough we have held that after initially being advised of his *Miranda* rights, the accused may himself validly waive his rights and respond to interrogation, see *North Carolina v. Butler,* [441 U.S. 369, 372-376 (1979)], the Court has strongly indicated that additional safeguards are necessary when the accused asks for counsel; and we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as [the defendant], having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversations with the police." 451 U.S. at 484-485 (footnote omitted).

Defendant contends that because he did not speak to an attorney about the Lane County charges prior to making his statements he had not waived his right to have counsel present during interrogation about those charges.

Defendant told the detectives on February 4 that he had spoken with his attorney. At that time he indicated that he was willing to talk to them about the Eugene burglaries. The detectives could ask defendant if he had spoken with his attorney. *Edwards* does not bar that inquiry. The detectives were entitled to rely on defendant's affirmative response. Nothing in *Edwards* prevented the detectives from then proceeding further.

■ We next determine whether defendant made a knowing and intelligent waiver of his rights. *Johnson v. Zerbst,* 304 US 458, 464, 58 S Ct 1019, 82 L Ed 1461 (1938). Defendant contends that his waiver was not valid because it was the product of impermissible coercion in the form of police promises of leniency and incommunicado incarceration. The question of whether a suspect has waived the right to counsel is uniquely one of fact, and usually must and should be left to the judgment of the trial court that has had the benefit of hearing the evidence and assessing the weight and credibility of testimony. The trial court did not make specific findings. It concluded that the state had met its burden of proving that the defendant's statements to the detectives on February 4, 26, 27, and 28, 1982, were freely and voluntarily given after advice of *Miranda* warnings. That conclusion is supported by the record. We find no error.

Defendant next contends that because he was not arraigned promptly in Lane County his statements must be suppressed. He argues that the denial of his statutory right to a prompt arraignment, at which time counsel would have been appointed, resulted in his uncounseled admissions.

■■ Defendant was arrested in Tillamook on a Lane County charge on January 20. He was arraigned in Lane County on March 1. Assuming, *arguendo,* that the state had violated defendant's right, violation of a statutory right does not *per se* require exclusion of a statement voluntarily made after advice of *Miranda* rights. *State v. Shipley,* 232 Or 354, 375 P2d 237 (1962), *cert den* 374 US 811 (1963); *State v. Jenks,* 43 Or App 221, 602 P2d 681 (1979). Delay can amount to a denial of due process where a defendant can show prejudice from the delay. *See Barnes v. Cupp,* 44 Or App 533, 537 n 1, 606 P2d 664, *rev den,* 289 Or 587 (1980). Although defendant contends that he was promised leniency and was subjected to a

lengthy period of incommunicado incarceration, that is a factual matter. The trial court's conclusion on the question of waiver is supported by the record. We find no error.

■ Defendant challenges the imposition of a maximum term of 20 years on each count, to be served consecutively, and the imposition of a mandatory minimum term of ten years on each count, each minimum term to be served consecutively. The trial judge explained his reasons for the sentences imposed. ORS 137.120(2). He initially observed that he was sentencing defendant on *ten* unrelated Class A felonies. He noted that defendant's several felonies in Tillamook County were being negotiated with the understanding that whatever sentences he received there would be served concurrently with any sentences imposed here. He found nothing in the record to mitigate defendant's crimes except that he had "cleared" some 85 burglaries in Eugene, Springfield, Portland and Tillamook, and that defendant had already been given consideration for that disclosure by his having seven other felony charges dismissed in Lane County and in his receiving concurrent sentences in Tillamook County. Further, defendant had a criminal record extending over 20 years, had served several terms in various penitentiaries and had violated probation and parole on several occasions. The judge concluded, "If there ever was a person who's a habitual criminal, it's Mr. Broadsword." We agree and find no error. *See State v. Divers,* 51 Or App 351, 625 P2d 681 (1981); *State v. Dinkel,* 34 Or App 375, 387-88, 579 P2d 245 (1978), *rev den* 285 Or 195 (1979); *see also Solem v. Helm,* ___ US ___, 103 S Ct 3001, 77 L Ed 2d 637 (1983).

Affirmed.