Argued and submitted January 12; resubmitted In Banc June 8, 1983, reversed and remanded for new trial March 14, reconsideration denied May 4, petition for review denied May 22, 1984 (297 Or 227)

# STATE OF OREGON,
*Respondent,*

*v.*

# HARRY MITCHELL BARMON,
*Appellant.*

## (20-791; CA A23867)

679 P2d 888

Norman Sepenuk, Portland, argued the cause for appellant. With him on the brief was James L. Collins, Portland.

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

NEWMAN, J.

Van Hoomissen, J., specially concurring in part, dissenting in part.

## NEWMAN, J.

Defendant appeals his convictions for rape in the first degree, sexual abuse in the second degree and burglary in the first degree. He assigns as errors that the trial court (1) provided written answers to jury questions in the absence of defendant and his counsel and without notice to them and (2) ruled that statements that defendant made to Detective Schultze of the Washington County Sheriff's Office were admissible at trial. Because we hold that the trial court erred in not suppressing statements defendant made to Schultze, we reverse and remand for a new trial and do not consider defendant's assignment of error regarding the court's answers to jury questions.

Defendant allegedly entered the home of the victim around 1 a.m. on April 8, 1981. In mid-morning she reported the incident to the police. She said that defendant had told her his name. Schultze knew defendant, whom he had previously hired to remodel his house. Schultze told defendant's wife that defendant was the prime suspect in a burglary-rape-sodomy investigation and that, if defendant did not contact Schultze by 4 p.m., he would seek a warrant for defendant's arrest. About 4 p.m., defendant's attorney telephoned Schultze and advised him that he was defendant's lawyer, that defendant would come to the police station by 5:15 p.m., that he had advised defendant not to talk to the police and that defendant would not make a statement.

About 5:20 p.m., defendant came to the police station without his counsel. Schultze took defendant into the interview room. He first asked defendant, "Other than this, how have things been going?" Defendant broke down and began to cry. He then asked, "Do I have a right to know what I'm being charged with?" Schultze responded, "Yes, rape, sodomy and burglary." Defendant then exclaimed, "I didn't steal anything!" Schultze then advised defendant of his *Miranda* rights. Defendant signed a waiver of rights card. Either just before or after Schultze gave the *Miranda* warnings, but following defendant's exclamation, "I didn't steal anything," Schultze said: "Harry, I'd like to help you if I can, but I've got to get your side of the story before I do." Defendant then made extensive incriminating statements to Schultze.

In a pretrial "Miranda" hearing to determine admissibility, the court ruled that defendant's statements to Schultze were admissible at trial. It found that defendant knew and understood his rights, that he was competent and adequately aware of the circumstances and that he knowingly and voluntarily waived his rights.[1] Schultze's testimony as to defendant's statements to him became a significant part of the state's case.[2] Defendant asserts that his statements to

---

[1] The trial court's findings and order from the pretrial *Miranda* hearing provide:

"1. That the verbal statements made by defendant to Louis Schultze on April 8, 1981, were made freely and voluntarily, without promise of consideration or lenience, and without threat or coercion;

"2. That prior to being advised of his rights, the defendant volunteered the statement, 'I didn't steal anything';

"3. That prior to any interrogation by the police, defendant was advised of the following rights:

"a. the right to remain silent;

"b. That anything the defendant said could be used against the defendant in Court;

"c. The right to counsel prior to and during questioning;

"d. The right to Court-appointed counsel if the defendant is indigent;

"4. That defendant knew and understood these rights, and was competent and adequately aware of the circumstances, and knowingly and voluntarily waived these rights * * *

"* * * * *."

[2] In his opening statement, the prosecutor described the testimony that Schultze would give:

"Put simply, he will describe to you — Detective Schultze will describe to you in detail what Mr. Barmon said, and, again, that will be very significant, but basically it is that he was lonely; he took some — he took a drug. His brain exploded. There are no statements about two eyes following him or bright lights; no Fourth of July effects. He got lonely and went to this house. He saw this woman. He went through a sliding-glass door. He put his shoulder to her bedroom door. He just wanted to talk to her. No gloves. He didn't put his hands around her throat; he put them on her shoulders. You will hear what I suggest to you are extremely mitigating or — well, mitigating factors from Mr. Barmon's version, and you will hear that he said, in effect, that this woman submitted or wanted to do these things, and she started kissing him. She wanted him to kiss her all over, and she participated, in effect, instigated these acts.

"That will be the testimony and the statement that Mr. Barmon, the Defendant, gave to Lou Schultze the next afternoon. Again, that will be significant, and I think in terms of what may have — may or may not have been said later and, certainly, in terms of the issue of credibility. Who are you going to believe in this particular situation and under these facts?

"So that's the State's case in chief * * *."

Schultze testified in the state's case in chief to the statements that defendant made to him. He also testified to defendant's statements in the state's rebuttal case.

Schultze were obtained in violation of his right to remain silent under the Fifth Amendment to the United States Constitution.[3] He also raises his right, under the Fifth Amendment, to the assistance of counsel at custodial interrogation, relying on *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981).[4]

---

The prosecutor, in his closing argument to the jury, emphasized the differences between defendant's statements to Schultze and defendant's testimony at trial:

"Now, the fourth charge is burglary * * *. Is there any doubt about that?

"* * * [W]hen he entered, he did it knowingly. In other words, he was aware of what he was doing and he did it with the intent to commit a crime, either the crime of rape or the crime of sodomy, a sexual assault crime, and I submit then, what that gets us to in the State's case in chief — putting the defense aside for the moment — is based upon the facts that you heard both from the victim and from Detective Schultze through his interview with the Defendant — No. 1, a credibility issue exists because the Defendant admits being there, but to Detective Schultze — and there's some important things — he admits finding an unlocked sliding glass door and opening it. He admits going down the hall, putting his shoulder to a locked bedroom door * * *."

In addition to pleading not guilty, defendant had given written notice to the state of intent to rely on mental disease or defect excluding responsibility under ORS 161.295 and ORS 161.309(1), and also diminishing responsibility under ORS 161.300 and 161.309(2). Defendant's psychiatrist, as part of defendant's case, testified that in her opinion defendant was suffering from a mental disease or defect from ingesting LSD. In light of Schultze's testimony as to defendant's statements, the prosecutor, on cross-examination, asked her what effect it would have on her diagnosis "if the defendant was not being truthful with you in recounting what happened that evening?" The psychiatrist replied that she thought defendant was being truthful and later answered that in any event it would not change her diagnosis.

[3] Defendant does not assert that his statements to Schultze were obtained in violation of his rights under Article I, section 12, of the Oregon Constitution, and so we do not consider the state constitutional question.

[4] In his brief in this court, defendant argues *Edwards* extensively. At the pretrial *Miranda* hearing in September, 1981, held after *Edwards* was decided, the trial court specifically considered *Edwards*. Following the close of the evidence and the arguments of counsel, the court stated:

"The trouble I have here — and I have been, as counsel can see, I have been looking at some case law — and that is when an attorney tells the officer that his client is not going to make a statement, does that bring it within Edwards vs. State of Arizona. The U.S.Supreme Court this last Spring said that, 'When an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges or conversation with the police.' So one issue we have is does that equate also with the fact situation where the officer is told by an attorney that, 'My client is not going to speak to you period. And if he tries to do so, you should call me.', or some words to that effect."

In *Solem v. Stumes,* \_\_\_\_ US \_\_\_\_, 104 S Ct 1338, 79 L Ed 2d 579 (1984), the United States Supreme Court declined to apply *Edwards,* decided May 18, 1981,

■ ■ The trial court, referring to *Edwards v. Arizona, supra,* commented at the pretrial hearing that "the accused himself has to initiate, has to actually begin the exchange with the officer." It concluded that "defendant himself did the initiating." The trial court's ruling, however, preceded the United States Supreme Court's analysis in *Oregon v. Bradshaw,* 462 US 1039, 103 S Ct 2830, 77 L Ed 2d 405 (1983), of the constitutional standard to be applied to the facts to determine who initiated the dialogue. Moreover, although we are bound by the trial court's findings of historical facts, we are not bound by its constitutional conclusions. *Ball v. Gladden,* 250 Or 485, 443 P2d 621 (1968); *see also State v. Warner,* 284 Or 147, 585 P2d 681 (1978); *State v. Bishop,* 49 Or App 1023, 621 P2d 1196 (1980), *rev den* 290 Or 727 (1981). Who "initiates" the exchange in light of the Fifth Amendment is not an historical fact but a conclusion of constitutional import. *Oregon v. Bradshaw, supra,* 462 US at 1045; *see also Edwards v. Arizona, supra.* As explained below, we conclude from the historical facts that Schultze, not defendant, "initiated" the dialogue.

■ First, it is clear that defendant was "in custody." He went to the police station at Schultze's demand and under threat of arrest. Defendant had told the victim his name. Schultze knew defendant was the man he wanted and had looked for defendant that afternoon. He had told defendant's wife to have defendant contact him by 4 p.m., or he would get a warrant for his arrest. In response to that demand, defendant's attorney called Schultze to tell him that defendant would come to the police station by 5:15 p.m., and defendant went to the station. When he asked Schultze, "Do I have a right to know what I am being charged with?", Schultze replied, "Yes, rape, sodomy and burglary." There is not the slightest doubt that Schultze intended to arrest defendant and that he was not free to leave. At the suppression hearing the court asked:

retroactively in a collateral review on habeas corpus in the federal court to a final state court conviction rendered eight years before *Edwards.* Its opinion states that "[f]or purposes of this case, that is all we need decide about *Edwards.*" ____ US at ____. We have held on direct review that *Edwards* applies in a direct appeal retroactively to rulings in the case that were made before *Edwards* was decided. *State v. Taylor,* 56 Or App 703, 708, 643 P2d 379 (1982). We are free here to apply *Edwards* and *Oregon v. Bradshaw,* 462 US 1039, 103 S Ct 2830, 77 L Ed 2d 405 (1983), which interpreted it.

"When he had come in, meaning Mr. Barmon, I assumed that he was not going to be allowed to go — leave voluntarily; is that correct?"

Schultze replied, "That's correct." From the moment defendant met Schultze at the police station he was in custody. *See State v. Roberti,* 293 Or 59, 644 P2d 1104, 293 Or 236, 646 P2d 1341 (1982); *State v. Paz,* 31 Or App 851, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978).

■ Next, we conclude that defendant's counsel, by his telephone call at 4 p.m., in anticipation of defendant's meeting with Schultze, invoked defendant's rights to remain silent and to have the assistance of counsel at custodial interrogation. *See State v. Sparklin,* 296 Or 85, 91, 672 P2d 1182 (1983).[5]

■ Finally, defendant cannot be found to have waived his Fifth Amendment rights here unless he initated the dialogue with the authorities. *Oregon v. Bradshaw, supra; Edwards v. Arizona, supra.* In *Edwards,* the court stated:

"* * * [W]e now hold that when an accused has invoked his right to have counsel present during custodial interrogation, *a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.* We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges or conversations with the police.*" 451 US at 484-85. (Emphasis supplied; footnote omitted.)

In *Oregon v. Bradshaw, supra,* the court discussed the meaning of the phrase "initiates further communication, exchanges or conversations with the police." There the police questioned the defendant at the police station about the death of a passenger in his pickup truck in a one-vehicle accident. The police gave *Miranda* warnings to the defendant. The defendant denied involvement in the traffic accident but admitted

---

[5] In *State v. Sparklin, supra,* 296 Or at 91, the court stated:

"Had Sparklin made a similar request in anticipation of, or during, interrogation he would have been entitled to the minimum protections afforded by the fifth amendment, the cessation of all interrogations until an attorney was made available to him." (Footnote omitted.)

providing the victim, a minor, with liquor. He was arrested for that offense. An officer again questioned him about the traffic accident and the defendant requested an attorney. The conversation terminated. Later the police placed defendant in a patrol car to take him from the police station to the county jail, a distance of about 10 to 15 miles. On his own initiative, the defendant opened the conversation with the police by asking, "Well, what is going to happen to me now?" The officer reminded the defendant that he did not have to talk because he had requested an attorney. The defendant said that he understood, and a discussion ensued that led to his agreement to take a polygraph test and to the incriminating statements.

In *Bradshaw* the court ruled that the defendant's question, "Well, what is going to happen to me now?" evinced "a willingness and desire for a generalized discussion about the investigation." A plurality of the court stated:

> "There are some inquiries, such as a request for a drink of water or a request to use a telephone that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Such inquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally 'initiate' a conversation in the sense in which that word was used in *Edwards*.

> "Although ambiguous, the respondent's question in this case as to what was going to happen to him *evinced a willingness and a desire for a generalized discussion about the investigation;* it was not merely a necessary inquiry arising out of the incidents of the custodial relationship." 462 US at 1045-46. (Emphasis supplied.)

The issue here, therefore, is whether defendant or Schultze initiated the exchange by conveying a "willingness and desire for a generalized discussion about the investigation."

We conclude that Schultze initiated the exchange when he said, "Harry, I'd like to help you if I can, but I've got to get your side of the story before I do." That statement evinced Schultze's "desire for a generalized discussion about the investigation." The statement also constituted "words or actions on the part of police, other than those normally attendant on arrest and custody, that the police should know

are reasonably likely to solicit an incriminating response from the suspect." *State v. Fitzgerald,* 60 Or App 466, 471, 653 P2d 1289 (1982); *Rhode Island v. Innis,* 446 US 291, 301-02, 100 S Ct 1682, 64 L Ed 2d 297 (1980); *see also State v. Rodriguez,* 37 Or App 355, 587 P2d 487 (1978).

Moreover, contrary to the circumstances in *Bradshaw,* the setting, the sequence of events and the conversation with defendant were orchestrated by the police. Schultze sought out defendant and demanded that he come to the police station. When defendant arrived at the station, Schultze took him into the interview room and began the conversation by saying, "Other than this, how have things been going?" Despite his apparently neutral opening question, we can reasonably conclude that Schultze's intention in bringing defendant into the interview room was to initiate a dialogue with him about the criminal investigation.

Furthermore, defendant's question to Schultze, "Do I have a right to know what I'm being charged with?" is not a question that evinced "a desire for a generalized discussion about the investigation." Unlike the defendant's question in *Bradshaw,* defendant's inquiry here related more to a "routine" incident of the custodial relationship. Defendant wanted to know the charges against him. Moreover, his succeeding exclamation, "I didn't steal anything," in response to Schultze's recitation of the charges, also did not evince a desire to open a generalized discussion about the investigation. Schultze apparently realized the limiting nature of this response, because he then stated, "Harry, I'd like to help you if I can, but I've got to get your side of the story before I do." With this statement, Schultze turned the exchange into a generalized discussion of the criminal investigation and "initiated" the exchange within the meaning of *Bradshaw.*

In *Bradshaw,* the court stated that *Edwards* requires a two-step analysis under the Fifth Amendment. As the Court ruled in *Bradshaw,* after an accused has invoked his right to counsel the police may not conduct custodial interrogation unless, first, the accused initiates the communication, exchanges or conversation with the police and, second, the state shows that subsequent to the initiation the accused knowingly and intelligently waived the Fifth Amendment right to have counsel present during the interrogation. We do

not reach the issue of waiver, however, because we conclude that the defendant did not initiate the dialogue with the police.[6] Accordingly, defendant's statements which followed Schultze's statement, "Harry, I'd like to help you if I can, but I've got to get your side of the story before I do," should have been suppressed.

The trial court's error was not harmless beyond a reasonable doubt. *Chapman v. California,* 386 US 18, 27, 87 S Ct 824, 17 L Ed 2d 705 (1967).

Reversed and remanded for a new trial.

**VAN HOOMISSEN, J.,** specially concurring in part; dissenting in part.

I concur with the majority that defendant is entitled to a new trial, but not for the reason stated. I reject the majority's analysis of the suppression issue and would agree with the trial court that defendant's statements are admissible.[1] A new trial is required, however, because the trial judge committed reversible error by communicating with the jury in defendant's absence.

The suppression issue, as framed by defendant in this court, reflects the way the issue was litigated at trial; i.e., whether defendant's statements were made after a knowing, intelligent and voluntary waiver of his *Miranda* rights.[2] Defendant did not argue in the trial court that he had asserted

___

[6] In *State v. Sparklin, supra,* the court stated:

"Once an attorney is appointed or retained, there can be no interrogation of a defendant concerning the events surrounding the crime charged unless the attorney representing the defendant on that charge is notified and afforded a reasonable opportunity to attend. No waiver of that right may occur until defendant has consulted with his attorney." 296 Or at 93.

"* * * * *

"Because defendant was represented by an attorney for the crimes against Steve Mansell, interrogation on this subject was improper and no waiver of this right can be given effect. However, with regard to the unrelated Davidson case, defendant's waiver is valid. * * *" 296 Or at 98.

[1] The trial court found that defendant's statement, "I didn't steal anything," was admissible. I agree with that conclusion and I understand that the majority does also. *See State v. Austin,* 1 Or App 556, 557, 465 P2d 256 (1970); *United States v. Booth,* 669 F2d 1231, 1237 (9th Cir 1981) *rev den* (1982).

[2] Defendant did not file a written motion to suppress. Rather, the prosecutor made an oral motion for a pretrial *Miranda* hearing to determine the admissibility of defendant's statements.

a right to have an attorney present during questioning.[3] There, as here, he only argued that the police had not scrupulously honored his desire to remain silent.

The trial court found that Detective Schultz's inquiry, "Other than this, how have things been going?" was neither interrogation nor its functional equivalent,[4] see *State v. Fitzgerald,* 60 Or App 466, 471, 653 P2d 1289 (1982), and that defendant's question, "Do I have a right to know what I'm being charged with?" and his exclamation, "I didn't steal anything!" after being informed that he was being charged with rape, sodomy and burglary, were "volunteered." The court also found that "there were no threats, duress or coercion," that "the advisement of rights was made adequately and properly" and that defendant's free will was not "overcome."

The court specifically rejected the application of *Edwards v. Arizona,* stating:

> "I find in this case that *Edwards v. Arizona* is inopposite [sic] in that the defendant himself did the initiating. And, therefore, the statements made, since he was properly and adquately advised of his rights and understood his circumstances, the statements will be admissible at his trial."

The court concluded:

> "So, one, I find Mr. Barmon understood his rights; and, two, effectively waived those rights and gave up those rights when he made responses to Detective Schultz. * * *"

I agree with the conclusion of the trial court.

The majority assumes that defendant asserted his right to have an attorney present during interrogation and applies *Edwards v. Arizona,* 451 US 477, 101 S Ct 1886, 68 L Ed 2d 378 (1981), and *Oregon v. Bradshaw,* 462 US 1039, 103 S Ct 2830, 77 L Ed 2d 405 (1983), in its analysis. The majority blurs the distinction between the right to remain silent and the right to have an attorney present, which is material to an analysis of waiver. *Edwards* noted that this distinction was made in *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L

---

[3]Defendant makes no claim under the Sixth Amendment, or under Article I, section 11, of the Oregon Constitution.

[4]The state assumes that defendant was in custody for *Miranda* purposes.

Ed 2d 694 (1966); *see also Michigan v. Mosley,* 423 US 96, 96 S Ct 321, 46 L Ed 2d 313 (1975).

When an accused, after advice of rights, asserts his right to remain silent, he indicates that he chooses to make his own decisions. However, when he requests consultation with an attorney or to have an attorney present, he indicates his need for assistance in deciding whether to make a statement or answer questions. The interdiction of *Edwards* is based on that precise distinction. The *Edwards* court said:

> "We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to interrogation by the authorities until counsel has been made available." 451 US 485.

*Edwards* discussed further procedures the police must follow when an accused requests the presence of an attorney. Those procedures are irrelevant to the issue defendant poses here.

Defendant's attorney called the police and told them that defendant would appear but would not make a statement. Neither the attorney nor defendant requested the attorney's presence at any subsequent questioning. The issue then is whether, having asserted his right *to remain silent,* defendant later waived that right.[5]

Even when an accused initially tells the police that he wishes to remain silent, the police may later determine if he wishes to waive the right previously asserted. *Edwards v. Arizona, supra,* 451 US at 484; *Michigan v. Mosley, supra,* 423 US 102-04; *State v. Jackson,* 60 Or App 681, 685, 655 P2d 592 (1982) *rev den* 294 Or 792 (1983). Nothing in *Edwards* prevents the police, after advising a defendant of his *Miranda* rights, from then asking him if he waives his rights and is willing to talk.

The question whether a suspect has waived his right to remain silent is uniquely one of fact. It usually must and

---

[5]Defendant urges that we adopt a *per se* rule requiring the presence of an attorney at the time of any alleged waiver of a previously asserted right if the police are aware that a person is represented by an attorney. The Supreme Court has specifically rejected that approach. *State v. Quinn,* 290 Or 383, 398-99, 623 P2d 630 (1981); *State v. Haynes,* 288 Or 59, 70, 602 P2d 272 (1979), *cert den* 446 US 945 (1980); *State v. Singleton,* 288 Or 89,100, 602 P2d 1059 (1979); *State v. Jackson,* 60 Or App 681, 655 P2d 592 (1982), *rev den* 294 Or 792 (1983).

should be left to the judgment of the trial court that has had the benefit of hearing the evidence and assessing the weight and credibility of testimony. *See State v. Broadsword,* 65 Or App 672, 677, 672 P2d 366 (1983). The totality of the circumstances here convinces me that the trial court's conclusion on the suppression question was correct, and I would uphold it.

Nonetheless, defendant is entitled to a new trial, because he correctly assigns as error the trial judge's impermissible communications with the jury. The jury commenced its deliberations in the early evening hours. Defendant and his counsel went to a nearby restaurant after informing the judge of their destination and that they would be able to return to the courtroom on short notice. On three separate occasions during the course of their deliberations, the jury sent written questions to the judge.[6] On each occasion the judge gave a written answer. The questions asked and the answers given were:

"(1)  If he is found guilty of rape - can he be found guilty of the lesser degree of sodomy? On Count II & III - or does that apply only if lesser degree I?

"Answer: Yes

"(2)  Can we find lesser degree of sexual abuse on Count II and III only (Sodomy). Please explain.

"Answer: You may make a finding on any one or more of each of the counts regarding a lesser offense in other words each count is independent of the other.

"(3)  If we find him not guilty on Counts #2 and #3 in the first degree, do we have to vote on the lesser degree?

"Answer: No."

Neither defendant nor his counsel was present when the questions were asked and the answers given. No attempt was made to contact them. Defendant's counsel became aware

---

[6]ORCP 59D, formerly ORS 17.325, provides:

"After retirement for deliberation, if the jury requests information on any point of law, the judge may require the officer having them in charge to conduct them into court. Upon the jury being brought into court, the information requested, if given, shall be given either orally or in writing in the presence of, or after notice to, the parties or their counsel."

This provision has been applied in criminal proceedings. *See, e.g., State v. Heintz,* 35 Or App 155, 580 P2d 1064 (1978).

of the possibility of jury communications only after returning from the restaurant. His associate observed a court employe give a note to the judge, who read it partially aloud, and then said, "No," wrote something on a piece of paper and handed it to the employe. The associate brought this to the attention of defendant's counsel, who suspected that it might have been a jury communication. That fact was not confirmed, however, until after the verdict was returned. At the hearing on defendant's motion for a new trial, the judge acknowledged his error. He concluded, however, that it was not prejudicial.

The state argues that, if defense counsel had brought his suspicions to the judge's attention before the verdict was received, the judge would have had an opportunity to correct his error, or at least to attenuate it significantly, by not receiving the verdict until the jury had been questioned or cautioned appropriately. It further argues that defendant is precluded from raising this error, because the denial of a motion for a new trial is not an appealable ruling when the motion is based on matters of which a party had knowledge during trial. *See, e.g., State v. Truxall,* 2 Or App 214, 216-17, 467 P2d 643 (1970). I reject that argument. The constitutional and statutory rights in issue here are defendant's, and there is no evidence that he or his counsel were aware of the judge's error before the verdict was returned. At best, the record might support a finding that defendant's counsel suspected some irregularity. Confirmation of that suspicion did not occur, however, until after the verdict was returned. Therefore, there was no waiver of those rights.

The state next argues that defendant was not prejudiced by the error. I likewise reject that argument. The state concedes in its brief that an examination of the jury's questions and the judge's answers shows that the jury had some difficulty understanding and applying the instructions. The state also concedes that the judge's simple "yes" response to the jury's first question was "probably unclear." As to the jury's third question, the state posits:

"Because of its ambiguity, the jury's third question, on a point different from that addressed in the first two questions, may seem to have more potential for error than the first two; but it is evident that any error would have been to defendant's benefit, and that the potential error did not materialize. Either the third question asks, 'Are we required to *convict*

defendant of the lesser offense of sexual abuse if we acquit him of sodomy?' — in which case the court correctly answered, 'no' — or the question asks, 'Do we even have to *vote* on the lesser offense of sexual abuse if we acquit defendant of sodomy?' — in which case the court's negative answer results in defendant's acquittal on that charge. In either case, there is no prejudice to defendant; but in fact, it seems clear that the jury was asking the former question, inasmuch as they ultimately acquitted defendant of one count of sodomy and found him guity of the lesser offense of sexual abuse on the other."

I would decline to speculate on what the jury was asking or what influence the judge's answers might have had on the jury's deliberations.

The state also argues that defendant is asking for the adoption of a *per se* rule requiring reversal whenever a judge provides written answers to a jury's written requests for clarification of its instructions in the absence of defendant and counsel. We rejected a *per se* rule in *State v. White,* 55 Or App 729, 639 P2d 1291 (1982), where the trial judge attempted unsuccessfully to contact defense counsel, whose whereabouts were unknown. Thereafter, the judge sent the jury a written instruction that he had given earlier without objection. We said:

"The question is whether the trial court's failure to comply with ORCP 59D was prejudicial error and therefore grounds for a mistrial. We hold that it was not. The procedure followed by the trial judge because of the record made was reviewable on appeal. The trial judge had no oral communication with the jury. He received a written question, delivered to him by the bailiff. The question was answered by delivering to the jury the written instruction. Following the verdict, the trial judge explained on the record the procedure he had followed. The question and the instruction are part of the record. Although it may have been a technical error to reinstruct the jury in counsels' absence, it was not a prejudicial error that requires a mistrial." 55 Or App at 732. (Citations omitted.)

The facts here are distinguishable from *White. See also State v. Beeson,* 248 Or 411, 434 P2d 460 (1967).

Finally, the state argues that, because the judge made it clear at the hearing on defendant's motion for a new trial that his error is not likely to recur, reversal is unnecessary. *See State v. Gortmaker,* 295 Or 505, 668 P2d 354 (1983). *Gortmaker*

is distinguishable. The question there was whether defendant's conviction by a properly constituted trial jury should have been reversed because of an improperly selected grand jury. Unlike in *Gortmaker,* here the regularity of the *trial* is in question.

Defendant did not waive his right to be present, nor did he waive his right to have his counsel participate in the decision of how the jury's questions should be answered, if at all, by the judge. I cannot say that the error was harmless beyond a reasonable doubt. *Chapman v. California,* 386 US 18, 27, 87 S Ct 824, 17 L Ed 2d 705, *reh den* 386 US 987 (1967); *State v. Stilling,* 285 Or 293, 590 P2d 1223 (1979). It is because of this error defendant must be given a new trial, not the alleged error the majority embraces.

Richardson, Warren and Rossman, Judges, join in this specially concurring and dissenting opinion.