Argued and submitted September 25, 1996, reversed and remanded February 5,
petition for review allowed May 20, 1997 (325 Or 367)
See later issue Oregon Reports

STATE OF OREGON,
*Appellant,*

*v.*

JAMES PENNY MEADE, JR.,
*Respondent.*

(95-1031; CA A90793)

933 P2d 355

Douglas F. Zier, Assistant Attorney General, argued the cause for appellant. With him on the brief were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General.

Jon S. Henricksen argued the cause and filed the brief for respondent.

Before Deits, Presiding Judge, and De Muniz and Haselton, Judges.

HASELTON, J.

## HASELTON, J.

The state appeals, ORS 138.060(3), from an order suppressing statements defendant made in this prosecution for sodomy in the first degree and sexual abuse in the first degree, after he allegedly equivocally requested counsel. The trial court determined that defendant had equivocally requested counsel and that the continuation of questioning, without clarifying that request, violated Article I, section 12, of the Oregon Constitution. We reverse and remand.

On May 31, 1995, defendant was returning to Portland from a business trip to the Ukraine. As defendant left the airplane at Portland International Airport, Lake Oswego police detectives Warner and Blevins, dressed in plain clothes, and a uniformed Port of Portland police officer stopped him and told him that they needed to talk to him. One of the detectives displayed his badge and assured defendant that his family was fine and that his luggage would be taken care of for him. The two detectives then escorted defendant to an interview room and told him he would be taken into custody after the interview. The detectives advised defendant of his *Miranda* rights and asked him if he understood his rights, to which defendant replied affirmatively.

The detectives told defendant that they were investigating allegations that he had inappropriately touched his girlfriend's eight-and-a-half-year-old daughter. Warner then questioned defendant at length about the substance of the allegations. Defendant responded to those questions fully and without objection. He acknowledged that it was "possible" that he had made sexual contact with the child but asserted that, if such contact had occurred, it was inadvertent or unconscious. He ultimately conceded that he "might have" had an erection and touched the child's bottom.

At that point—it is unclear from the record exactly how much time had elapsed—defendant said, "If I need a lawyer, I want a lawyer."[1] Detective Warner paused. Defendant then held up his hands to prevent Warner from speaking further, and said, "You've talked a lot. I want to say a few

---

[1] The state argues that defendant stated, "If I need a lawyer, I will get a lawyer." However, the trial court found defendant's testimony regarding his statement

things." Defendant, without pause, then began to explain how his relationship with his girlfriend was "going down the drain and his concerns about that." He complimented the detectives on their investigation but said that they wanted him to confess to something he had not done. Warner responded, "No, I don't want you to confess to something that you didn't do, but I have this investigation, and I believe you did it."

Warner then resumed his questioning, without referring to, or attempting to clarify the meaning of, defendant's, "If I need a lawyer, I want a lawyer" statement. Defendant subsequently made several inculpatory statements.

Defendant was charged with three counts of sexual abuse in the first degree, ORS 163.427, and three counts of sodomy in the first degree, ORS 163.405. Defendant moved to suppress all of the statements he made during his interview with the detectives, arguing that those statements were involuntary and in violation of his rights under Article I, section 12, of the Oregon Constitution,[2] and the Fifth[3] and Sixth[4] Amendments to the United States Constitution. In particular, defendant argued that (1) the officers took advantage of his extreme fatigue from the long air flight, so that his will was overborne; (2) the officers never informed defendant of his *Miranda* warnings; and (3) the officers impermissibly questioned him after he had invoked his right to counsel. The trial court disagreed with defendant as to the first two arguments but concluded that defendant's statement, "If I need a lawyer, I want a lawyer," was an equivocal request for counsel that was never waived and, thus, that the subsequent

---

credible, and we are bound by that finding of historical fact, because there is evidence to support it. *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968).

   [2] Article I, section 12, provides, in part:

   "No person shall * * * be compelled in any criminal prosecution to testify against himself."

   [3] The Fifth Amendment provides, in part:

   "No person * * * shall be compelled in any criminal case to be a witness against himself[.]"

   [4] The Sixth Amendment provides, in part:

   "In all criminal prosecutions, the accused shall enjoy the right * * * to have the Assistance of Counsel for his defense."

interrogation violated Article I, section 12. The court, consequently, suppressed all statements defendant made after Warner resumed the interrogation.

On appeal, the state argues that defendant's, "If I need a lawyer, I want a lawyer," statement was not a request for an attorney. The state further argues that, even if that statement was an equivocal request, defendant immediately thereafter waived his right to counsel when he unilaterally volunteered information regarding his relationship with his girlfriend, the detectives' handling of the investigation, and his innocence regarding the allegations. Defendant responds that his statement represented, at least, an equivocal request for counsel and that, once he made that request, it was incumbent on the officers to clarify that request before resuming the interrogation. Defendant asserts that, because the officers failed to do so, the continued interrogation violated Article I, section 12.[5]

We conclude that the trial court erred in suppressing defendant's statements. Assuming, without deciding, that defendant equivocally requested counsel, his immediately ensuing unilateral statements to the detectives evinced " 'a willingness and a desire for a generalized discussion about the investigation,' " and, under the totality of the circumstances, effected a waiver of the right to counsel. *State v. Barmon*, 67 Or App 369, 376, 679 P2d 888 (quoting *Oregon v. Bradshaw*, 462 US 1039, 1045-46, 103 S Ct 2830, 77 L Ed 2d 405 (1983)), *rev den* 297 Or 227 (1984). Accordingly, subsequent renewal of interrogation did not violate that right.

■ Under Article I, section 12, "[w]hen a suspect in custody unequivocally requests to talk to a lawyer, that request must be granted and further questioning must cease." *State v. Montez*, 309 Or 564, 572, 789 P2d 1352 (1990). However, "after [the suspect] asserts the right to counsel, the suspect is free to waive that right." *Id.*

---

[5] Although defendant argued below that the detectives' actions violated his Fifth and Sixth Amendment right to have counsel present during questioning, he does not make that argument on appeal. Consequently, we consider the issue only under Article I, section 12.

In *State v. Kell*, 303 Or 89, 734 P2d 334 (1987), the court adopted and applied the reasoning of *Edwards v. Arizona*, 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981), in analyzing whether the defendant had waived his rights under Article I, section 12:

> " '[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, * * * having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, *unless the accused himself initiates further communication, exchanges, or conversations with the police.*' " *Kell*, 303 Or at 96 (quoting *Edwards*, 451 US at 484 (footnote omitted)) (emphasis supplied).

The court in *Kell* did not explain what kind of action constitutes "initiat[ing] further communication * * * with the police." However, it did cite with approval another United States Supreme Court case, *Oregon v. Bradshaw*, in which the Court held that an accused initiates communication by making statements that "evince a willingness and a desire for a generalized discussion about the investigation[.]" 462 US at 1045-46.

In *Bradshaw*, the Court explained that continued interrogation of a person who has invoked the right to counsel does not violate the Fifth Amendment if two conditions are satisfied. First, " 'the accused himself initiates further communication, exchanges, or conversations with the police.' " 462 US at 1044 (quoting *Edwards*, 451 US at 485). Second,

> " 'the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.' " 462 US at 1045 (quoting *Edwards*, 451 US at 486 n 9).

With respect to the first inquiry, the Court held that a suspect "initiates" a conversation with the police when he or she "evince[s] a willingness and a desire for a generalized

discussion about the investigation." 462 US at 1045-46. Specifically:

> "There are some inquiries, such as a request for a drink of water or a request to use a telephone, that are so routine that they cannot be fairly said to represent a desire on the part of an accused to open up a more generalized discussion relating directly or indirectly to the investigation. Such inquiries or statements, by either an accused or a police officer, relating to routine incidents of the custodial relationship, will not generally 'initiate' a conversation in the sense in which that word was used in *Edwards.*" *Id.* at 1045.

The Court then addressed the second cumulative condition—*i.e.*, whether the defendant had made a voluntary, knowing, and intelligent waiver of his right to counsel before the police renewed their interrogation:

> "As we have said many times before, this determination depends upon ' "the particular facts and circumstances surrounding [the] case, including the background, experience, and conduct of the accused." ' " *Bradshaw*, 462 US at 1046 (quoting *North Carolina v. Butler*, 441 US 369, 374-75, 99 S Ct 1755, 60 L Ed 2d 286 (1979), quoting *Johnson v. Zerbst*, 304 US 458, 464, 58 S Ct 1019, 82 L Ed 1461 (1938)).

The Court concluded that there had been a valid waiver in *Bradshaw*, given the facts that

> "[the police] made no threats, promises or inducements to talk, that defendant was properly advised of his rights and understood them and that within a short time after requesting an attorney he changed his mind without any impropriety on the part of the police." *Bradshaw*, 462 US at 1046.

In *State v. Barmon*, we applied *Bradshaw*'s analysis. There, the police, who had identified the defendant as a suspect in a burglary-rape-sodomy investigation, told the defendant's wife that, unless he contacted the police, he would be arrested. The defendant's counsel subsequently called the police and told them that the defendant would come to the police station, but that he had been advised not to talk to the police and would not make any statements to them. The defendant then came to the station, without counsel, and the following occurred:

"[The officer] took defendant into the interview room. He first asked defendant, 'Other than this, how have things been going? Defendant broke down and began to cry. He then asked, 'Do I have a right to know what I'm being charged with?' [The officer] responded, 'Yes, rape, sodomy and burglary.' Defendant then explained, 'I didn't steal anything!' [The officer] then advised defendant of his *Miranda* rights. Defendant signed a waiver of rights card. Either just before or after [the officer] gave the *Miranda* warnings, but following defendant's exclamation, 'I didn't steal anything,' [the officer] said: 'Harry [the defendant], I'd like to help you if I can, but I've got to get your side of the story before I do.' Defendant then made extensive incriminating statements to [the officer]." 67 Or App at 371.

We concluded that, as a result of his attorney's prior phone call, the defendant's rights to remain silent and to the assistance of counsel had already been invoked at the time he came to the police station. *Id.* at 375. We further concluded that the defendant's statements did not satisfy *Bradshaw*'s first, "initiation of conversation" requirement and, thus, that the defendant's statements must be suppressed:

"[D]efendant's question to [the officer], 'Do I have a right to know what I'm being charged with?' is not a question that evinced 'a desire for a generalized discussion about the investigation.' Unlike the defendant's question in *Bradshaw*, defendant's inquiry here related more to a 'routine' incident of the custodial relationship. Defendant wanted to know the charges against him. Moreover, his succeeding exclamation, 'I didn't steal anything,' in response to [the officer's] recitation of the charges, also did not evince a desire to open a generalized discussion about the investigation. [The officer] apparently realized the limiting nature of this response, because he then stated, 'Harry, I'd like to help you if I can, but I've got to get your side of the story before I do.' With this statement, [the officer] turned the exchange into a generalized discussion of the criminal investigation and 'initiated' the exchange within the meaning of *Bradshaw*." *Barmon*, 67 Or App at 377.

Given that disposition, we did not reach, or address, *Bradshaw*'s second, "waiver" requirement. *Id.* at 378. *See also State ex rel Juv. Dept. v. Thai/Schmolling*, 138 Or App 354, 358-59, 908 P2d 844 (1995) (child's statements, asking "why" he had been arrested for sexual abuse and stating that the

allegations "were not true and that only his brother Michael was the one that did that" did not evince a desire to engage in a generalized discussion about the substance of the investigation).

■ Applying *Bradshaw*'s analysis, as amplified in *Barmon*, to this case, we conclude that the state proved both that defendant "evinced a willingness and desire for a generalized discussion about the investigation," *Bradshaw*, 462 US at 1045-46, and that defendant made a knowing and intelligent waiver of his alleged "equivocally" invoked right to assistance of counsel during custodial interrogation. Accordingly, the trial court erred in suppressing defendant's statements.

With respect to *Bradshaw*'s first prong, defendant's statements during his soliloquy, after his "If I need a lawyer, I want a lawyer" comment, were more than "a necessary inquiry arising out of the incidents of the custodial relationship." *Bradshaw*, 462 US at 1046. Although those statements were not necessarily inculpatory, they pertained directly or indirectly to the substance of the investigation. Defendant's statements about the disintegration of his relationship with the complainant's mother pertained to the credibility of, and possible motivation for, the allegations against him. Moreover, although defendant complimented the officers on their handling of the investigation, he then suggested that they wished him to confess to something he had not done. The tenor and thrust of his statements, from his announcement, "I want to say a few things," to his statement denying the allegations, indicated his willingness to talk with the detectives about the accuracy of their investigation against him. Thus, defendant's statements constituted an initiation of further substantive discussion with the detectives.

With respect to *Bradshaw*'s second requirement, no Oregon case has described the attributes or assessed the sufficiency of an alleged voluntary, knowing, and intelligent waiver of a previously invoked right to counsel. *Cf. Barmon*, 67 Or App at 378 (expressly not reaching issue). Consequently, we turn to federal authority applying *Bradshaw* for guidance on that issue.[6] Two federal appellate decisions are

---

[6] We are not, of course, bound by decisions of the lower federal courts interpreting and applying *Bradshaw*, in determining whether defendant's statements

especially instructive: *Poyner v. Murray*, 964 F2d 1404 (4th Cir), *cert den* 506 US 958 (1992), and *Pittman v. Black*, 764 F2d 545 (8th Cir), *cert den* 474 US 982 (1985).

In *Poyner*, the defendant was arrested after the police found the body of a murdered woman and her car with defendant's fingerprints on it. The police advised him of his *Miranda* rights and asked him if he understood his rights, to which he replied affirmatively. When the officers began questioning the defendant about his involvement with the car, he asked, "Didn't you say I have a right to an attorney?" and an officer replied, "Yes you do, that is correct." The officers, believing that the defendant had invoked his right to counsel, ceased interrogation and began to rise from their seats when the defendant stated, "Let me tell you about the car." He then explained that he had been in the neighborhood where witnesses had reported seeing him with her car and that he had given a man there some candy. One of the officers then asked, "Did you kill her?" and the defendant said, "Yes." On further questioning, he described the murder and later confessed to the murders of several other women.

The court concluded that, even assuming that the defendant properly invoked his right to counsel, his statement "Let me tell you about the car," when viewed in the totality of the circumstances, effected a voluntary, knowing, and intelligent waiver of that right. After determining that the defendant's statement was voluntary, as " 'the product of a free and deliberate choice rather than intimidation, coercion or deception' on the part of the police," 964 F2d at 1413 (quoting *Moran v. Burbine*, 475 US 412, 421, 106 S Ct 1135, 89 L Ed 2d 410 (1986)), the court addressed whether the waiver was knowing and intelligent:

> "The factors relevant to this inquiry may include the suspect's intelligence and education, age and familiarity with the criminal justice system, the proximity of the waiver to

---

constituted a waiver of his rights under Article I, section 12. However, reference to such authority is helpful, given *Kell*'s reliance on Fifth Amendment-based decisions in assessing the requisites of waiver of rights under Article I, section 12. Moreover, as the court stated in *Kell*:

> "[T]here is no value in being different merely for the sake of the difference. That other courts generally follow a particular rule and that it appears to us to work satisfactorily are reasons in favor of following it in Oregon." 303 Or at 95.

the giving of the *Miranda* warnings, and the 'necessary fact that the accused, not the police, reopened the dialogue with the authorities.' *Edwards*, 451 US at 486 n 9. * * * First, though Poyner's measured I.Q. of between 79 and 85 comes within the 'dull normal' category, he nevertheless completed the eighth grade in school. He is able to read and write and was able to work and function in society, except during his many prior entanglements with the criminal law. * * *

"Second, the record reveals that Poyner was no stranger to the criminal justice system. * * * Poyner's background provided him with at least some familiarity with his rights and with the process to which he would be subjected[.]

"Finally, the most compelling evidence that Poyner's waiver was knowing and intelligent comes from an examination of the sequence of events at the interrogation itself. * * * To suggest that [Poyner's] conduct, after twice being advised of his right to counsel and after observing the detectives' willingness to cease the interrogation should he request counsel, was not knowing and intelligent simply strains credulity." *Poyner*, 964 F2d at 1413-14 (some citations omitted).

In *Pittman*, the defendant was arrested for a number of robberies. After receiving his *Miranda* warnings, the defendant indicated that he was willing to make a statement. He stated that, "it appeared he was being railroaded and perhaps he should talk to an attorney." 764 F2d at 546. At that point, the interrogating officer told the defendant that he would stop the questioning. As the officer gathered his papers and prepared to leave, the defendant "asked [the officer] whether it appeared the other suspects were trying to put all of the blame on him." *Id*. The officer said that he had only heard one side of the story and that he would be glad to hear the defendant's side. The defendant discussed the robberies with the officer.

The Eighth Circuit affirmed the trial court's denial of the defendant's motion to suppress his inculpatory statements. After determining that the defendant had initiated a generalized discussion about the investigation, 764 F2d at 547, the court concluded that the defendant's waiver was voluntary, intelligent, and knowing:

"We agree with the district court's conclusion that [the defendant] made a knowing and intelligent waiver of his Miranda rights. The evidence clearly shows that [the defendant] was fully informed of his rights, he understood them, and he expressly waived them prior to any questioning by the police. * * * Following the invocation of his right to counsel, [the defendant] himself initiated further conversation with the police. The officers' response to [the defendant's] question and the interrogation following that response 'would not have caused [the defendant] to forget the rights of which he had been advised and which he had understood moments before.' *Wyrick v. Fields*, 459 US 42, 103 S Ct 394, 74 L Ed 2d 215 (1982)." *Pittman*, 764 F2d at 547 (some citations omitted).

*Poyner* and *Pittman* differ from this case—and, indeed, from each other. Nevertheless, many, if not all, of the factors the courts in those cases found to be significant were present here. The first is " 'the necessary fact that the accused, not the police, reopened the dialogue with the authorities.' " *Poyner*, 964 F2d at 1413; *Pittman*, 764 F2d at 547, both *quoting Edwards*, 451 US at 486 n 9. Although that factor, obviously, does not by itself establish that a defendant's waiver was voluntary, intelligent, and knowing,[7] it is significant.

Second, defendant was highly educated—*i.e.*, he had earned a doctorate in psychology—and was, presumably, highly intelligent. Third, after being initially informed of his rights, defendant waived those rights and engaged in an extended substantive dialogue with the investigating officers. Fourth, the trial court found that, at the time defendant initially waived his rights, he understood his rights, that he was "alert" throughout the interview, and that, before his alleged equivocal request for counsel, all of defendant's statements were "the result of free, unconstrained, and informed choice." Fifth, the time period between when defendant initially was informed of his rights and immediately waived those rights, and his subsequent alleged invocation of his

[7] If it did, *Bradshaw*'s first inquiry would subsume, and obviate, its second. *Accord Poyner*, 964 F2d at 1412-13 ("whether the suspect voluntarily, knowingly, and intelligently waived his right to counsel is a separate inquiry from the question of whether the suspect reinitiated interrogation").

rights, and immediate reinitiation of the substantive discussion, was relatively short—almost certainly less than an hour—and nothing occurred during that period that reasonably could have altered defendant's understanding of his rights.

The totality of those circumstances demonstrates that, even if defendant did equivocally invoke his right to counsel, he effectively waived that right before Warner renewed his questioning. Accordingly, the trial court erred in suppressing defendant's statements.

Reversed and remanded.