Argued and submitted December 20, 1984, reversed and remanded for new trial
April 3, 1985

## STATE OF OREGON,
*Respondent,*

*v.*

## TONY CRAWFORD,
*Appellant.*

(147,065; CA A31942)

698 P2d 40

John Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Philip Schradle, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

GILLETTE, P. J.

## GILLETTE, P. J.

Defendant appeals his conviction for attempted sexual penetration with a foreign object in the first degree. He assigns as error the trial court's denial of his pretrial motion to suppress incriminating statements made to the police, allegedly obtained in violation of his rights under the Fifth and Fourteenth Amendments of the United States Constitution. We reverse.

The incident leading to this appeal occurred while defendant was incarcerated in the Marion County Jail. He had been implicated in the sexual assault of a fellow inmate by two other prisoners—suspects who had been interrogated and arrested by Officer Ramirez. Ramirez then contacted defendant in the jail and brought him downstairs to an interrogation room in the sheriff's office. Defendant was advised of his *Miranda* rights by Ramirez before questioning began. The exact content of their conversation is a matter of dispute between the parties but, even accepting Ramirez' version, reversal is required.

Ramirez explained to defendant the nature of the investigation and the fact that he had been implicated by the other two suspects. Defendant denied any involvement in the incident; Ramirez then told defendant that he was going to be arrested on a charge of sodomy. At this point, defendant said that he would discuss the charge with an attorney. Ramirez then placed defendant under formal arrest, handcuffed him and proceeded to return him to the jail floor.

While ascending to the jail floor in the elevator, the two men conversed. Ramirez testified:

> "The only thing I told him was that I needed to get his side of the story if he wanted to give it to me about what had taken place and that is up to him but as far as the charge it still stood."

Later in his testimony Ramirez explained:

> "That was something I told him from the onset [of the interrogation], that the only facts I would get would be his side of the story about the incident * * *."

Before defendant could respond, the elevator arrived at the jail floor, at which time he again asserted his desire to see an

attorney. Ramirez acknowledged defendant's right to an attorney; defendant then asked a series of questions regarding the charge against him.[1]

While responding to defendant's questions, Ramirez took the opportunity to remind defendant that he had the confessions of the other suspects implicating him and that he would be charged. Defendant then indicated that he was willing to make a statement giving "his side of the story." The two returned downstairs to the interrogation room, and defendant was again given his *Miranda* rights. He acknowledged that he understood those rights and then gave a statement implicating himself in the incident.

Defendant contends that he invoked his right to the assistance of counsel at his custodial interrogation twice during his interrogation and that, afterward, Ramirez initiated further custodial interrogation in violation of *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 694 (1966). *Miranda* established a "rigid rule that an accused's request for an attorney is *per se* an invocation of his Fifth Amendment rights, requiring that all interrogation cease." *Fare v. Michael C.,* 442 US 707, 719, 99 S Ct 2560, 61 L Ed 2d 197 (1979). *Miranda* was further refined in *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981), where the court said:

> "We further hold that an accused * * *, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been available to him, unless the accused initiates further communication, exchanges or conversations with police." 451 US at 484.

Defendant first claims that he requested aid of counsel in the interrogation room after Ramirez informed him of the implicating statements of the other suspects. The state contends that defendant's statement on that occasion, "Well I will discuss it with an attorney," is "very ambiguous" and that

---

[1] Ramirez testified at the suppression hearing:

"Q: And then you get to the floor and you say that he asked you a couple of questions * * *?

"A: It was in reference, I [believe] it was in reference to the charge itself, you know, what it carried and so forth."

it indicated only a future intent by defendant to discuss the matter with an attorney, not an immediate request for the assistance of counsel. We do not agree. Defendant had been unexpectedly taken to an interrogation room and told that he would be charged with a very serious felony. Considering the circumstances, the state's interpretation of his request suggests an extraordinarily casual attitude on defendant's part. *See Smith v. Illinois*, 469 US ___, 105 S Ct 490, 83 L Ed 2d 488 (1984).

Beyond the inherent unlikelihood of the state's position, the course of events in the interrogation room and Ramirez' testimony clearly show that defendant asked for an attorney there. After defendant said that he would discuss the charge with his attorney, Ramirez terminated the interrogation and said, "Fine, that is your prerogative." He then formally arrested and handcuffed defendant for their return to the jail floor. Furthermore, on direct examination Ramirez testified:

"Q: Now I think in your narrative you suggested that Mr. Crawford said something about an attorney as a consequence, do you recall specifically what he said?

"A: That he wanted to talk to an attorney regarding the matter.

"Q: Did he say precisely that he wanted to talk to an attorney though?

"A: That is correct. That is correct."

Not only did Ramirez testify that he understood defendant to be exercising his right to see an attorney, his immediate termination of the interrogation reflects the same understanding.

Having found that the right to counsel was exercised, we must determine if defendant's later statements were tainted by the improper interrogation following the exercise of his rights. Defendant asserts that the interrogation was initiated by Ramirez' statement in the elevator that he "needed to get [defendant's] side of the story if he wanted to give it to me about what had taken place * * *." On cross-examination, Ramirez acknowledged that that was the same tack he had taken in his initial interrogation.

In *Oregon v. Bradshaw*, 462 US 1039, 103 S Ct 2830,

77 L Ed 2d 405 (1983), the Supreme Court described a reinitiation of interrogation by a defendant as a statement that "evinced a willingness and a desire for a generalized discussion about the investigation; [and] not merely a necessary inquiry arising out of the incidents of the custodial relationship." 462 US at 1045-46, (77 L Ed 2d at 412). We recently applied *Bradshaw* in *State v. Barmon,* 67 Or App 369, 679 P2d 888, *rev den* 297 Or 227 (1984), which involved issues similar to those in the case at bar.

In *Barmon,* a rape and burglary suspect surrendered himself to police after his attorney had called and had said that his client would come to the police station. The attorney told the police that he had advised his client not to talk to the police and that the client would not be making a statement. After the defendant was advised of the charges against him, the custodial officer, who knew the defendant, said: "Harry, I'd like to help you if I can, but I've got to get your side of the story before I do." 67 Or App at 371. We held, following *Bradshaw,* that the police officer's statement evinced a desire for a generalized discussion about the investigation and, therefore that the police had improperly initiated interrogation after the defendant had exercised his right to counsel. The police officer's request for the defendant's side of the story was interrogation, because it constituted " 'words or actions on the part of police, other than those normally attendant on arrest or custody, that the police should know are reasonably likely to [elicit] an incriminating response from the suspect.' " 67 Or App at 376, *quoting State v. Fitzgerald,* 60 Or App 466, 471, 653 P2d 1289 (1982) (*citing Rhode Island v. Innis,* 446 US 291, 301-02, 100 S Ct 1682, 64 L Ed 2d 297 (1980)).

Following our analysis in *Barmon,* we hold that Ramirez' comment in the elevator was interrogation improperly initiated after defendant had exercised his right to assistance of counsel.

■ The state argues that defendant only asked for an attorney after his return to the jail floor and that he subsequently waived his right by reinitiating the conversation with Ramirez. The argument is beside the point in the light of our conclusion that impermissible interrogation had occurred earlier. We note, however, that questions from a defendant

being charged with a felony regarding, in Ramirez' words, "reference to the charge itself, you know, what it carried and so forth," do not evince "a desire for a generalized discussion about the investigation." *State v. Barmon, supra,* 67 Or App at 377.

We hold that the trial court erred in denying defendant's motion to suppress.

Reversed and remanded for a new trial.