Argued and submitted December 3, 1986, Court of Appeals reversed and conviction reinstated March 24, 1987

STATE OF OREGON,
*Petitioner on review,*

*v.*

MICHAEL DALE KELL,
*Respondent on review.*

(CC 10-83-01182; CA A28691; SC S32572)

734 P2d 334

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for petitioner on review. With him on the petition were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

Diane Alessi, Deputy Public Defender, Salem, argued the cause for respondent on review.

Before Peterson, Chief Justice, and Lent, Linde, Campbell, Carson and Jones, Justices.

JONES, J.

## JONES, J.

The state petitions for review from a decision of the Court of Appeals reversing defendant's murder conviction, holding that incriminating statements made by defendant to police while in custody were inadmissible at defendant's trial because the statements were obtained in violation of defendant's rights against self-incrimination under Article I, sections 11 and 12, of the Oregon Constitution[1] and the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. 77 Or App 199, 712 P2d 827 (1986). We reverse the Court of Appeals and reinstate the judgment of conviction.

This case arises out of the bombing death of Robert Harris. Harris died as the result of a dynamite explosion. The dynamite allegedly was wired to Robert Harris's car by defendant Michael Kell and co-defendant Terry White. Kell and White, along with Barbara Harris, the decedent's wife, were indicted for aggravated murder. Defendant was convicted of aggravated murder. ORS 163.095(2)(c).

Police investigation of the car bombing and death of Robert Harris led to arrest warrants for murder for the three co-defendants. Kell was arrested on the warrant in Santa Barbara, California, and held there for Springfield, Oregon, police. He was questioned by two detectives from the Springfield Police Department at the Santa Barbara jail. The Santa Barbara police recorded the interview.

After a few preliminary comments, the officers read defendant his *Miranda* rights as set forth in *Miranda v. Arizona,* 384 US 436, 86 S Ct 1602, 16 L Ed 2d 294 (1966). Defendant acknowledged understanding each of his rights and consented to talk to police. The preliminary discussion concerned defendant's early life, employment, family, residences and the like. The taped interview revealed that the following discussion then occurred:

---

[1] Article I, section 11, of the Oregon Constitution provides in part:

"In all criminal prosecutions, the accused shall have the right * * * to be heard by himself and counsel * * *."

Section 12 provides:

"No person shall be put in jeopardy twice for the same offence, nor be compelled in any criminal prosecution to testify against himself."

"POLICE:   Would you have been involved in this if you did not know the other people?

"DEFENDANT:   I couldn't have; wasn't my idea.

"POLICE:   Other people have told us you were the primary instigator.

### [FIRST INVOCATION]

"**DEFENDANT:   That's a raft of bullshit! It was my idea, huh! Well I'm not going to go any further with this until I speak with a lawyer.**

**[Defendant still talking]**

"**POLICE:   Well let me tell you this though \* \* \***

**[Defendant still talking]**

"**DEFENDANT:   No, I mean I'll talk to you about it, but as far as** *this, my idea,* **I want to talk to a lawyer because this is a bunch of bullshit!**

"**POLICE:   Do you want to talk to us?**

"**DEFENDANT:   Well, yeah, doesn't matter to me.**"(Emphasis added.)

At this point the police continued to interview Kell. He went on to make other incriminating statements concerning the theft of the dynamite used; the testing of the dynamite to make sure it was good; the presence of White and Harris at the test; the testing of the wiring in the victim's car to find a "hot" wire; and the actual wiring of the dynamite to the car and his presence at the car when it was wired.

Later in the conversation the Springfield police officers took a break. Upon reconvening the conversation, they again advised defendant of his *Miranda* rights. Defendant acknowledged that he understood those rights. During that part of the interview, the following conversation took place:

"POLICE:   When Mr. Harris was killed, dynamite was placed in his car. Is that correct?

"DEFENDANT:   Yes.

"POLICE:   Did you put it there?

"DEFENDANT:   No.

"POLICE:   Did Terry?

"DEFENDANT:   You could say yes. I went with him down there, but * * *

"POLICE:   Why don't you describe what happened before you went there. Did you go somewhere prior to going down there?

### [SECOND INVOCATION]

"DEFENDANT:   No. You know, to tell you the truth, I would rather, from what you people have said, from what you're telling me Terry told you, I would rather talk to a lawyer about the *whole deal* because I think someone is trying to incriminate me.

"POLICE:   That is certainly your right if you want to. (Pause) Do you have anything you want to ask us?

"DEFENDANT:   Nothing other than the fact that exactly what Terry told you about — that was incriminating to me.

"POLICE:   Well basically I told you earlier, Terry said you are the one who set the wire in the car — Harris's car — put the dynamite in there and wired it up.

"DEFENDANT:   See, that's what I'm saying, someone is trying to blame everything on me. That's a lot of BS, and I would rather talk to an attorney about it before I say anything about that.

"POLICE:   [Concluded the interview]" (Emphasis added.)

At trial defendant sought to prevent the introduction of the tape recordings into evidence. Defendant argued that he had invoked his right to counsel and that the police officers failed to stop the interview until counsel for defendant was provided. After listening to the tapes, aided by a transcript, the trial court ruled:

"* * * I'll admit evidence of statements made by the defendant, notwithstanding his first invocation of his rights to an attorney, for the reason that I've concluded that was an equivocal invocation of his rights and he changed his mind almost immediately and so indicated to the officers."

With regard to the second invocation by defendant of

his right to counsel, the trial court ruled that this was an effective invocation of the right.

On appeal, the Court of Appeals stated that defendant asserted violation solely of his right to be free from self-incrimination under Article I, section 12, of the Oregon Constitution and that he made no separate claim under the federal constitution. We respectfully disagree. Defendant at time of trial asserted violation of both state and federal constitutional rights and in his brief to the Court of Appeals incorporated his trial court objection in addition to requesting the appellate court to adopt the rule of *Edwards v. Arizona,* 451 US 477, 101 S Ct 1880, 68 L Ed 2d 378 (1981), (set out below) under the Oregon Constitution. We will, therefore, address both the state and federal questions.

The Court of Appeals held that the first invocation by defendant of his right to counsel was not equivocal and therefore the first set of statements was also inadmissible. In a footnote to the opinion, the Court of Appeals held that the police initiated the additional conversation with defendant and, therefore, defendant's clarification of his invocation was not a waiver under *Edwards v. Arizona, supra.* The Court of Appeals also expressly construed this court's opinion in *State v. Sparklin,* 296 Or 85, 672 P2d 1182 (1983), as requiring *Miranda* warnings under Article I, section 12, of the Oregon Constitution.

We allowed review to determine if police interrogating a person in custody may properly discuss certain aspects of a crime which the suspect is willing to talk about, even though the suspect wishes to consult a lawyer as to some other specific aspect of the crime. In other words, can there be a partial waiver of the right against self-incrimination?

From a procedural point of view, in deciding whether any state statute or Article I, section 11 or 12, of the Oregon Constitution has been violated, our first step is not to match up interpretation of our state laws and constitution with federal law or the federal constitution on the issue whether this defendant waived his right against self-incrimination by agreeing with the police to speak on certain aspects of a crime but not others. Interpretation of Oregon statutes and the

Oregon Constitution is the responsibility of this court. However, we agree with the Court of Appeals' procedural analysis in this case that we must evaluate the issue of waiver in the light both of Oregon's sole responsibility for the meaning of the Oregon Constitution and of the benefits of adhering to rules which are widely followed outside Oregon and which we consider to be satisfactory.

■      Although no authority outside Oregon can control our decision, there is no value in being different merely for the sake of the difference. That other courts generally follow a particular rule and that it appears to us to work satisfactorily are reasons in favor of following it in Oregon. Further, in this case, defendant states in his response to this court's question concerning waiver that "all that defendant asked in this case was the adoption of the *Edwards* rule under the Oregon Constitution. Under either constitution, therefore, federal constitutional analysis is applicable." We agree with the Court of Appeals that the federal *Edwards* waiver rule should be utilized in interpreting similar waiver issues under Oregon law. We followed this approach in *State v. Sparklin, supra,* where this court refused to require that a suspect be given more detailed warnings than *Miranda* requires before police questioning. We did so because we did not believe that the alternative warnings were a sufficient improvement to justify a variation from the federal rule "[a]t least as long as the text of the federal *Miranda* warnings remains the law." 296 Or at 89. A majority of this court has not been able to agree whether *Miranda*-type warnings are required under the Oregon Constitution. *State v. Smith,* 301 Or 681, 725 P2d 894 (1986).[2] We are agreed, however, that, *Miranda* questions aside, once a suspect in custody unequivocally requests to talk to a lawyer, that request must be granted and questioning should cease.

The question in this case is not whether *Miranda* warnings should be given, but what the police may do when a suspect in custody requests to consult a lawyer. In *Miranda v. Arizona,* 384 US at 444-45, the Court stated:

---

[2] In *State v. Smith,* 301 Or 681, 725 P2d 894 (1986), three members of this court, the Chief Justice and Campbell and Carson, JJ., held that no *Miranda*-type prophylactic rule was required to protect an individual's rights under the Oregon Constitution, while three members of the court, Lent, Linde and Jones, JJ., agreed that such warnings are required for persons in custody, although they disagreed when and where those warnings must be given.

"Prior to any questioning, the person must be warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed. The defendant may waive effectuation of these rights, provided the waiver is made voluntarily, knowingly and intelligently. If, however, he indicates in any manner and at any stage of the process that he wishes to consult an attorney before speaking there can be no questioning."

In 1980 we held in *State v. Haynes,* 288 Or 59, 602 P2d 272 (1980), that police officers had no authority to prevent or delay communication between an arrested person and a lawyer, but that an arrested person, not yet indicted or formally charged with a crime, can voluntarily waive consultation with counsel and make voluntary statements which will be admissible against him. 288 Or at 70. The court explained that the issue of a suspect's access to counsel is "an aspect of his right to answer questions or provide incriminating testimony only voluntarily. Or Const art I, § 12 * * *." 288 Or at 71.

We now turn to the question when the right to consult counsel is waived.

In 1981 the Supreme Court of the United States decided *Edwards v. Arizona, supra.* The Court clarified the waiver rule set forth in *Miranda* as follows:

"[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." 451 US at 484 (footnote omitted).

Later, in *Oregon v. Bradshaw,* 462 US 1039, 1044, 103 S Ct 2830, 77 L Ed 2d 405 (1983), the Court commented that *Edwards* was "in effect a prophylactic rule, designed to protect an accused in police custody from being badgered by police officers in the manner in which the defendant in Edwards was."

In *Smith v. Illinois,* 469 US 91, 105 S Ct 490, 83 L Ed 2d 488 (1984), the Court again addressed the waiver issue. This case involved the arrest of an 18-year-old who was taken to an interrogation room and questioned by two police detectives. The session began as follows:

"Q.   Steve, I want to talk with you in reference to the armed robbery that took place at McDonald's restaurant on the morning of the 19th. Are you familiar with this?

"A.   Yeah. My cousin Greg was.

"Q.   Okay. But before I do that I must advise you of your rights. Okay? You have a right to remain silent. You do not have to talk to me unless you want to do so. Do you understand that?

"A.   Uh. She told me to get my lawyer. She said you guys would railroad me.

"Q.   Do you understand that as I gave it to you, Steve?

"A.   Yeah.

"Q.   If you do want to talk to me I must advise you that whatever you say can and will be used against you in court. Do you understand that?

"A.   Yeah.

"Q.   You have a right to consult with a lawyer and to have a lawyer present with you when you're being questioned. Do you understand that?

"A.   *Uh, yeah. I'd like to do that.*" 469 US at 92-93, 83 L Ed 2d at 491-92 (emphasis added).

Instead of terminating the questioning at this point, the officers proceeded to finish reading Smith his *Miranda* rights and interrogated him further, leading to a confession. The Supreme Court held that Smith had unambiguously expressed his desire to deal with the police only through counsel and therefore was not subject to further interrogation by the authorities, citing *Edwards.* In this *per curiam* opinion, the majority wrote that the defendant's request for counsel was neither indecisive nor ambiguous. The majority made further comment that the decision was a narrow one and "we do not decide the circumstances in which an accused's request for counsel may be characterized as ambiguous or ambivalent * * * nor do we decide the consequences of such ambiguity or equivocation." 469 US at 99-100, 83 L Ed 2d at 496.

In *Oregon v. Elstad,* 470 US 298, 105 S Ct 1285, 84 L Ed 2d 222 (1985), Justice O'Connor, writing for the majority, reiterated that prophylactic *Miranda* warnings are not themselves rights protected by the Constitution but are instead measures to insure that the right against compulsory self-incrimination is protected, citing *Michigan v. Tucker,* 417 US 433, 444, 94 S Ct 2357, 41 L Ed 2d 182 (1974), and *Edwards v. Arizona, supra,* 451 US at 492 (Powell, J., concurring). She wrote:

> "The *Miranda* exclusionary rule * * * serves the Fifth Amendment and sweeps more broadly than the Fifth Amendment itself. It may be triggered even in the absence of a Fifth Amendment violation. The Fifth Amendment prohibits use by the prosecution in its case in chief only of *compelled* testimony. Failure to administer *Miranda* warnings creates a presumption of compulsion. Consequently, unwarned statements that are otherwise voluntary within the meaning of the Fifth Amendment must nevertheless be excluded from evidence under *Miranda.* Thus, in the individual case, *Miranda's* preventive medicine provides a remedy even to the defendant who has suffered no identifiable constitutional harm. [Citation omitted.]" *Elstad,* 470 US at 306-07, 84 L Ed 2d at 230-31 (emphasis in original).

She then addressed the waiver issue, stating:

> "* * * Once warned, the suspect is free to exercise his own volition in deciding whether or not to make a statement to the authorities. The Court has often noted: ' "[A] living witness is not to be mechanically equated with the proffer of inanimate evidentiary objections illegally seized. . . . [T]he living witness is an individual human personality whose attributes of will, perception, memory and *volition* interact to determine what testimony he will give." ' *United States v. Ceccolini,* 435 US 268, 277 (1978) (emphasis added) * * *." *Elstad,* 470 US at 308-09, 84 L Ed 2d at 232.

In *Moran v. Burbine,* 475 US ___, ___, 106 S Ct 1135, 89 L Ed 2d 410, 421 (1986), Justice O'Connor, again writing for the majority, stated that the waiver of rights conveyed in the *Miranda* warnings involves an inquiry of two distinct dimensions:

> "* * * First the relinquishment of the right must have been voluntary in the sense that it was the product of a free and

deliberate choice rather than intimidation, coercion or deception. Second, the waiver must have been made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the 'totality of the circumstances surrounding the interrogation' reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived. *Fare v. Michael,* 442 US 707, 725, 61 L Ed 2d 197, 99 S Ct 2569 (1979). * * *"

Chief Justice Rehnquist in *Connecticut v. Barrett,* ___ US ___, 107 S Ct 828, 93 L Ed 2d 920 (1987), addressed the problem created when a person being interrogated in custody states that he would not make a written statement outside the presence of counsel but is willing to admit orally his involvement in a crime. The Chief Justice wrote that the fundamental purpose of the *Miranda* decision "was to assure that *the individual's right to choose* between speech and silence remains unfettered throughout the interrogation process," but, once warned, "the suspect is free to exercise *his own volition* in deciding whether or not to make a statement to the authorities." *Barrett,* 93 L Ed 2d at 927 (emphasis in original). The Court then noted that Barrett's limited requests for counsel were accompanied by affirmative announcements of his willingness to speak with the authorities. "Barrett made clear his intentions, and they were honored by the police. To conclude that respondent invoked his right to counsel for all purposes requires not a broad interpretation of an ambiguous statement, but a disregard of the ordinary meaning of respondent's statement." *Id.* at 928.

*Connecticut v. Barrett* is a reasonable interpretation of the *Edwards* waiver rule. We do not imply that all future elaborations or changes of the analysis by the United States Supreme Court also will apply to a claim under Oregon law. In applying the rationale of these cases to the facts of the case at bar, we conclude that defendant, after being fully warned and voluntarily waiving his rights against self-incrimination, chose to speak to the police officers about every aspect of the case except as to whose idea it was to dynamite the car. Defendant was entitled to pick and choose what he wished to talk about. We note that there was no interrogation by the police

following defendant's first statement of interest in an attorney.[3] The officer attempted to interrupt defendant but defendant just kept on talking, stating unequivocally, "No, I mean I'll talk to you about it, but as far as this, my idea, I want to talk to a lawyer * * *." At this precise point, no "interrogation" was being conducted by the police, and the very next statement by the officer was to ensure that the suspect wanted to talk to the police and the defendant's response was unequivocal. We conclude that this defendant voluntarily waived his rights of self-incrimination under both the state and federal constitutions.

*Edwards v. Arizona* is entirely consistent with this conclusion. It must be remembered that Edwards, after first waiving his *Miranda* rights during interrogation discussing a possible "deal," said, "I want an attorney before making a deal." The police then ceased questioning him and he was returned to jail. The next morning two detectives went to the jail and asked to see Edwards; Edwards replied that he did not want to talk to anyone, but the guard told him that he had to talk and then took him to meet with the detectives. Edwards did not validly waive his right to counsel and his right to remain silent.

The facts of the present case simply do not fit *Edwards*, which was and is good federal law and is equally applicable to Article I, sections 11 and 12, of the Oregon Constitution. Defendant's statements made after the first warning did not require suppression.

Finally, we do not need to address whether the voluntary statements made in violation of the *Miranda* rule are admissible for impeachment purposes. The statements made by this defendant after the second invocation were cumulative or meaningless. Any attempted use during cross-examination of defendant of his statements made after the second invocation of rights was innocuous and did not constitute reversible error.

---

[3] The Court of Appeals simply misconstrued the record when it stated that "defendant did in fact ask that questioning cease until he could talk to a lawyer. That the officer's statement provoked a response in which defendant apparently agreed to keep talking * * *." 77 Or App at 207. Defendant never asked that the questioning cease; instead he chose to keep talking. The officer's statement did not provoke any response.

The Court of Appeals is reversed and the judgment of conviction is reinstated.