Argued and submitted September 28, 2015, convictions on Counts 1 and 2
reversed and remanded, remanded for resentencing, otherwise affirmed
March 9, 2016

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

ANTHONY JOSEPH CAVALLARO,
*Defendant-Appellant.*

Douglas County Circuit Court
11CR1815FE; A155552

369 P3d 1220

Marc D. Brown, Deputy Public Defender, argued the
cause for appellant. With him on the brief was Peter Gartlan,
Chief Defender, Office of Public Defense Services.

Rolf C. Moan, Assistant Attorney General, argued the
cause for respondent. With him on the brief were Ellen F.
Rosenblum, Attorney General, and Anna M. Joyce, Solicitor
General.

Before Sercombe, Presiding Judge, and Tookey, Judge, and Shorr, Judge.*

SHORR, J.

---

* Shorr, J., *vice* Nakamoto, J. pro tempore.

**SHORR, J.**

In this criminal appeal, defendant assigns error to, among other things, the trial court's denial of his motion to suppress. Defendant was found guilty of two counts of attempted sexual abuse in the first degree (Counts 1 and 2), and those verdicts were merged into a single conviction. Defendant also pleaded no contest to failure to register as a sex offender (Count 3). On appeal, defendant argues the trial court erred when it failed to suppress incriminating statements that defendant made to police after he asserted his right to counsel under Article I, section 12, of the Oregon Constitution and the Fifth Amendment to the United States Constitution.[1]

The trial court concluded that, despite defendant's initial unequivocal assertion of his constitutional rights, he later waived those rights when he reinitiated conversation with the police. On appeal, the state does not argue that defendant reinitiated conversation with the police. Rather, the state contends that defendant's initial unequivocal assertion of his constitutional right to counsel was rendered equivocal by defendant's subsequent statement that defendant did not understand why he was in prison and his comment about his parole being revoked. For the reasons discussed below, we conclude that defendant's invocation of his right to counsel was unequivocal and he did not reinitiate conversation with the police intending to have a general discussion about the investigation. Thus, we reverse on Counts 1 and 2 and remand for further proceedings; otherwise, we affirm.

We begin with the standard of review. In reviewing a trial court's denial of a motion to suppress, we are bound by the trial court's historical findings of fact if they are supported by evidence in the record. *State v. Holdorf*, 355 Or

---

[1] Article I, section 12, provides, "[n]o person shall be put in jeopardy twice for the same offence, nor be compelled in any criminal prosecution to testify against himself." The Fifth Amendment provides, in relevant part, "[n]o person shall * * * be compelled in any criminal case to be a witness against himself * * *."

Although defendant asserts both state and federal constitutional rights, we begin—and, in this case, end—with an analysis under our state constitution. *See State v. Babson*, 355 Or 383, 432-33, 326 P3d 559 (2014) (acknowledging sound policy reasons for analyzing state constitutional claims first).

812, 814, 333 P3d 982 (2014). We review the constitutional conclusions for errors of law. *State v. Avila-Nava*, 356 Or 600, 609, 341 P3d 714 (2014).

Applying that standard of review, we turn to the trial court's historical findings of material fact, which are both supported by the record and undisputed. On August 15, 2011, the Roseburg Police Department began investigating defendant following allegations of sexual abuse. Officer Walton interviewed defendant on that day. At the conclusion of that interview, defendant was arrested for a parole violation and failure to register as a sex offender. He was not charged at that time based on the separate sexual abuse allegations.

On August 18, 2011, Detective Chrisenberry went to the Douglas County corrections facility to further question defendant about the sexual abuse allegations. Chrisenberry was joined by another Roseburg detective as they approached defendant in the jail's intake area.

When Chrisenberry approached defendant to speak with him, defendant stated that he "did not want to talk to [the detective] without an attorney present." Chrisenberry replied "okay," and the detectives turned and started to walk away out of the intake area. At that point, defendant stated that he "didn't really know why he was in jail" and mentioned something about his parole being revoked. Chrisenberry then explained that he had reviewed Walton's interview of defendant and he wanted to talk to defendant about "an allegation made against him that he may believe is false." At that point, defendant stated that he would speak with the detective without his attorney present.

Immediately following that initial meeting, the detectives and defendant went to the nearby Roseburg Police Department building where the detectives read defendant his *Miranda* rights and reviewed the facts of their initial meeting. Defendant confirmed that he understood his rights and would talk with the detectives without an attorney present. During that and subsequent interrogations that day, defendant made a number of incriminating statements that defendant moved to suppress before trial.

Turning to the legal principles at issue, Article I, section 12, guarantees persons the right to be free from compelled self-incrimination. The right against self-incrimination includes the derivative right to counsel during any custodial interrogation. *State v. Scott*, 343 Or 195, 200, 166 P3d 528 (2007); *State v. Meade*, 327 Or 335, 339, 963 P2d 656 (1998). The right to counsel is derivative because a lawyer's presence at a custodial interrogation is one way to ensure a suspect's right to be free from self-incrimination and protect against the inherent level of coercion that exists in custodial interrogations. *Meade*, 327 Or at 339. Once a suspect in custody unequivocally requests counsel, all inter-rogation by police must cease. *State v. Kell*, 303 Or 89, 95, 734 P2d 334 (1987).

Defendant argues on appeal that he unequivocally invoked his right to speak with counsel under Article I, section 12, which should have cut off any further police interro-gation outside of defendant's attorney's presence. Defendant also contends that the trial court erred in concluding that he reinitiated conversation with the police in a manner that waived his prior unequivocal invocation of his right to counsel.

We have considered the text, context, and history of Article I, section 12, in many prior cases. As discussed below, that case law clearly controls given the facts here. Our analysis under Article I, section 12, focuses on the fol-lowing three inquiries:

> "(1) whether the suspect was subject to custodial interroga-tion; (2) whether the suspect invoked the right to counsel in an equivocal or an unequivocal manner; and (3) in some cases, whether the suspect waived a prior invocation of the right to counsel."

*Scott*, 343 Or at 200-01. With respect to the first issue, the trial court found, and the parties do not dispute, that defen-dant was in custody at the police station. The focus in this case is on the second and third inquiries (and the interplay between them).

The trial court concluded, and neither party disputes, that defendant, at least initially, unequivocally asserted his

constitutional right to counsel. Chrisenberry testified that, when the detectives first approached defendant, defendant indicated that he did not want to speak with them without an attorney present. That constituted a clear and unequivocal assertion of defendant's right to an attorney. *See Avila-Nava*, 356 Or at 609 (stating that, in determining whether a defendant unequivocally invoked his rights, "interpretation is only required where the defendant's words, understood as ordinary people would understand them, are ambiguous"(internal quotation marks omitted)).

At that point, the officers were not permitted to interrogate defendant unless he voluntarily waived his rights by affirmatively initiating further contact with the police. *Kell*, 303 Or at 95, 99-100. When an accused has invoked a right to have counsel present at an interrogation, "a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Edwards v. Arizona*, 451 US 477, 484, 101 S Ct 1880, 68 L Ed 2d 378 (1981); *Kell*, 303 Or at 99-100 (following the federal constitutional analysis under *Edwards* for determining waiver when conducting the Oregon constitutional analysis).

Defendant contends on appeal that he did not reinitiate conversation with the police in a manner that indicated he was waiving his right to confer with counsel during any custodial interrogation. Although it now takes a different position on appeal, the state argued below that defendant voluntarily initiated further conversation with the police when defendant, after the detectives started to walk away, stated that he "didn't really know why he was in jail" and mentioned something about his parole being revoked. The trial court agreed with the state and held that defendant's affirmative initiation of conversation with the detectives—and his subsequent agreement to speak after he had later been read his rights again—indicated that defendant knowingly and voluntarily waived his prior invocation of his right to counsel. For the reasons that follow, we disagree and conclude that defendant did not initiate further conversation in a manner that indicated he was voluntarily waiving his right to have counsel present during any interrogation.

To demonstrate that a suspect has waived a prior invocation of a right to counsel, the state must show both that (1) the suspect initiated dialogue with the police in a way that "'evinced a willingness and a desire for a generalized discussion about the investigation'" and (2) there was a subsequent knowing and intelligent waiver of constitutional rights. *State v. Crawford*, 73 Or App 53, 57-58, 698 P2d 40 (1985) (quoting *Oregon v. Bradshaw*, 462 US 1039, 1045-46, 103 S Ct 2830, 77 L Ed 2d 405 (1983)).

The circumstances in *State v. Barmon*, 67 Or App 369, 679 P2d 888, *rev den*, 297 Or 227 (1984), are similar to those here. In *Barmon*, the suspect, after invoking his right to counsel and silence, inquired of the police officer, "Do I have a right to know what I'm being charged with?" 67 Or App at 371. We concluded that such a question does not evince "a desire for a generalized discussion about the investigation," but "related more to a 'routine' incident of the custodial relationship." *Id.* at 377. Similarly, in *State ex rel Juv. Dept. v. Thai/Schmolling*, 138 Or App 354, 359, 908 P2d 844 (1995), we held that a youth's inquiry about "why" he was being arrested "was merely incidental to that arrest" and was not sufficient initiation of a conversation with the police under our constitutional analysis. *See also State v. Boyd*, 270 Or App 41, 47, 346 P3d 626, *rev allowed*, 357 Or 550 (2015) (the defendant's questions about why he was in jail and references to his "baby girl" were not reinitiation permitting further interrogation); *Crawford*, 73 Or App at 58-59 (noting that a suspect's questions about the charge and "what it carried and so forth" did not evince a desire for generalized discussion about the investigation).

Applying those similar cases here, we hold that the trial court erred in concluding that defendant reinitiated conversation with the police in a manner that indicated "a desire for a generalized discussion about the investigation." Defendant's statements did not indicate a desire to have a generalized discussion about the sexual abuse investigation. Rather, like the questions in *Barmon, Thai/Schmolling*, and *Boyd*, they were statements that related to, and likely sought clarification regarding, the routine incidents of defendant's custody.

On appeal, the state now concedes that there was not sufficient reinitiation, but argues for the first time that defendant's initial unequivocal assertion of his right to counsel was immediately rendered equivocal by his subsequent statements that he did not know why he was in jail and his reference to the parole revocation. The state argues that defendant's initial unequivocal assertion of his right to counsel may have related solely to the parole violation, and the detectives had a right to clarify the ambiguity that defendant's assertion of rights might not have extended to the sexual abuse investigation.

Even assuming that argument is an appropriate alternative basis for affirmance under *Outdoor Media Dimensions Inc. v. State of Oregon*, 331 Or 634, 659-60, 20 P3d 180 (2001), the argument is unavailing based on the Supreme Court's decision in *Avila-Nava*. There, the court concluded that,

> "in determining whether an unequivocal invocation of the right against self-incrimination was made, a court considers the defendant's words, in light of the totality of the circumstances *at and preceding the time they were uttered*, to ascertain whether a reasonable officer would have understood that the defendant was invoking that right."

*Avila-Nava*, 356 Or at 612 (emphasis added). In other words, whether an invocation of rights is unequivocal is determined by a court reviewing "those words, in the context of the totality of circumstances *existing at the time of and preceding their utterance.*" *Id.* at 613 (emphasis added); *see also Smith v. Illinois*, 469 US 91, 100, 105 S Ct 490, 83 L Ed 2d 488 (1984) (holding, under the Fifth Amendment, that evidence that is obtained by the police questioning subsequent to a suspect's invocation of *Miranda* rights may not be considered in determining whether an earlier invocation is ambiguous but only whether there was a valid subsequent waiver of rights). Here, the state has conceded that defendant's initial statement was an unequivocal invocation of the right to counsel. There is no dispute that, "at the time of and preceding [the] utterance," defendant's invocation was unequivocal.

In *Avila-Nava*, the Supreme Court, in a footnote, cited cases applying the Fifth Amendment that have considered whether what might otherwise be an unequivocal invocation can be rendered equivocal if followed "immediately and spontaneously" by words inconsistent with the invocation. 356 Or at 612 n 7. The Supreme Court noted cases that have discussed whether an unequivocal invocation was rendered equivocal where the time between the defendant's request to end questioning was "'separated by little more than a breath' from subsequent utterances that would lead a reasonable officer to doubt whether the defendant in fact wished to do so." *Id.* (quoting *State v. Rogers*, 277 Neb 37, 67, 760 NW 2d 35 (2009)). While noting those Fifth Amendment cases, the Supreme Court expressly declined to consider whether a suspect's otherwise unequivocal invocation of rights under Article I, section 12, might be rendered equivocal by spontaneous words uttered in the next breath that would lead a reasonable officer to doubt the suspect's intention to invoke the right to remain silent. *Id.*

We conclude that, even assuming the state's "next breath" argument has any application under Article I, section 12, it could not apply based on the facts here. The facts in this record, when viewed in the light most favorable to the state, indicate that a reasonable officer would have understood that defendant's invocation of his right to an attorney was both unequivocal and complete at the time defendant first asserted the right. In fact, the detectives understood that defendant's invocation of his right to counsel was complete. After defendant invoked his rights, Chrisenberry said, "okay," and both detectives turned away from defendant and started to leave the jail's intake area. The only reasonable inference is that the detectives believed the conversation was over when defendant unequivocally invoked his right to counsel.[2] Under these circumstances, any argument that a "next breath" exception applies is unavailing.

Further, we have already concluded above that defendant's subsequent utterances—that he "didn't really know why he was in jail" and his reference to a parole

---

[2] The state also consistently argued to the trial court and before us that, at that point, defendant had unequivocally asserted his right to counsel. We agree.

violation—did not evince a "willingness and a desire for a generalized discussion about the investigation," but were statements related to a "routine incident of the custodial relationship." Those subsequent utterances would not lead a reasonable police officer to believe that defendant, contrary to his prior unequivocal invocation, was now suddenly willing to waive his constitutional right and speak with the officers about their criminal investigation without an attorney present. Under these circumstances at least, we conclude that defendant's invocation of his right to counsel was unequivocal and complete, and could not be rendered ambiguous by his subsequent statements relating to his custody.

For those reasons, we conclude that the trial court erred when it failed to suppress defendant's post-invocation statements obtained in violation of Article I, section 12. *See State v. Moore/Coen*, 349 Or 371, 383, 245 P3d 101 (2010), *cert den*, 563 US 996 (2011) (remedy for violation of Article I, section 12, is suppression). That error was not harmless given the highly prejudicial nature of defendant's incriminating admissions that likely affected the verdict. *See State v. Gibson*, 338 Or 560, 576, 113 P3d 423, *cert den*, 546 US 1044 (2005) (stating that Article VII (Amended), section 3, of the Oregon Constitution requires a court to affirm despite any trial court error if there is little likelihood that the error affected the verdict).[3]

Convictions on Counts 1 and 2 reversed and remanded; remanded for resentencing; otherwise affirmed.

---

[3] Because we reverse and remand defendant's conviction on Count 1 based on defendant's first assignment of error, we need not reach defendant's second assignment of error, which challenges only his sentencing on Count 1 on state and federal constitutional grounds.